# SOUTHERN PACIFIC COMPANY *v.* LOWE, UNITED STATES COLLECTOR OF INTERNAL REVENUE FOR THE SECOND DISTRICT OF NEW YORK.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 452.   Argued March 4, 5, 6, 1918.—Decided June 3, 1918.

Accumulations that accrued to a corporation through surplus earnings or appreciation in property value, before the adoption of the Sixteenth Amendment (February, 1913), and the effective date (March, 1913), of the Income Tax Act of 1913 (Act October 3, 1913, c. 16, 38 Stat. 166), are to be regarded as its capital, not as its income for the purposes of that act.

Although, in general, the Income Tax Act of 1913, unlike that of June 30, 1864, treated corporate earnings as not accruing to the shareholders until the time when a dividend was paid (*Lynch* v. *Hornby, post,* 339), and although in ordinary cases the mere accumulation of adequate surplus does not entitle a shareholder to dividends until the directors, in their discretion, declare them, yet, where the shares of a corporation were all owned, and its property and funds possessed, and its operations and affairs completely dominated, by another corporation, so that the two were in substance but one, and where dividends from the one to the other were consummated, after the Act of 1913 became effective, by a mere paper transaction—formal vote of the directors of the first company and entries on the books of the two—and represented merely what the second company was entitled to have as shareholder before January 1, 1913, from a surplus theretofore accumulated, *held*, that such dividends were not taxable as income of the shareholding company within the true intent and meaning of the Income Tax Act of 1913.

238 Fed. Rep. 847, reversed.

THE case is stated in the opinion.

*Mr. Gordon M. Buck* for plaintiff in error.

*The Solicitor General,* with whom *Mr. Wm. C. Herron* was on the brief, for defendant in error.

Mr. *Robert R. Reed,* by leave of court, filed a brief on behalf of the Investment Bankers' Association of America, as *amicus curiæ.*

MR. JUSTICE PITNEY delivered the opinion of the court.

This case presents a question arising under the Federal Income Tax Act of October 3, 1913, c. 16, 38 Stat. 114, 166. Suit was brought by plaintiff in error against the Collector to recover taxes assessed against it and paid under protest. There were two causes of action, of which only the second went to trial, it having been stipulated that the trial of the other might be postponed until the final determination of this one. So far as it is presented to us, the suit is an effort to recover a tax imposed upon certain dividends upon stock, in form received by the plaintiff from another corporation in the early part of the year 1914, and alleged by the plaintiff to have been paid out of a surplus accumulated not only prior to the effective date of the act but prior to the adoption of the Sixteenth Amendment to the Constitution of the United States. The District Court directed a verdict and judgment in favor of the Collector, 238 Fed. Rep. 847, and the case comes here by direct writ of error under § 238, Judicial Code, because of the constitutional question. That our jurisdiction was properly invoked is settled by *Towne* v. *Eisner,* 245 U. S. 418, 425.

The case was submitted at the same time with several other cases arising under the same act and decided this day, viz., *Lynch* v. *Turrish, ante,* 221; *Lynch* v. *Hornby, post,* 339, and *Peabody* v. *Eisner, post,* 347.

The material facts are as follows: Prior to January 1, 1913, and at all times material to the case, plaintiff, a

corporation organized under the laws of the State of
Kentucky, owned all the capital stock of the Central
Pacific Railway Company, a corporation of the State of
Utah, including the stock registered in the names of the
directors.[1] This situation existed continuously from the
incorporation of the Railway Company in the year 1899.
That company is the successor of the Central Pacific Rail-
road Company and acquired all of its properties, which
constitute a part of a large system of railways owned or
controlled by the Southern Pacific Company. The latter
company, besides being sole stockholder, was in the
actual physical possession of the railroads and all other
assets of the Railway Company, and in charge of its oper-
ations, which were conducted in accordance with the terms
of a lease made by the predecessor company to the South-
ern Pacific and assumed by the Railway Company, the
effect of which was that the Southern Pacific should pay
to the lessor company $10,000 per annum for organization
expenses, should operate the railroads, branches, and
leased lines belonging to the lessor, and account annually
for the net earnings, and if these exceeded 6 per cent. on
the existing capital stock of the lessor the lessee should
retain to itself one-half of the excess; advances by the
lessee for account of the lessor were to bear lawful interest,
and the lessee was to be entitled at any time and from
time to time to refund to itself its advances and interest
out of any net earnings which might be in its hand. The
provisions of the lease were observed by both corporations
for bookkeeping purposes. The Southern Pacific acted
as cashier and banker for the entire system; the Central
Pacific kept no bank account, its earnings being deposited
with the bank account of the Southern Pacific; and if the

---

[1] There was another question, concerning a dividend paid by the Re-
ward Oil Company, whose stock likewise was owned by the Southern
Pacific Company, but the contention of plaintiff in error respecting
this item has been abandoned.

Central Pacific needed money for additions and betterments or for making up a deficit of current earnings, the necessary funds were advanced by the Southern Pacific. As a result of these operations and of the conversion of certain capital assets of the Central Pacific Company, that company showed upon its books a large surplus accumulated prior to January 1, 1913, principally in the form of a debit against the Southern Pacific, which at the same time, as sole stockholder, was entitled to any and all dividends that might be declared, and being in control of the board of directors was able to and did control the dividend policy. The dividends in question were declared and paid during the first six months of the year 1914 out of this surplus of the Central Pacific accumulated prior to January 1, 1913; but the payment was only constructive, being carried into effect by bookkeeping entries which simply reduced the apparent surplus of the Central Pacific and reduced the apparent indebtedness of the Southern Pacific to the Central Pacific by precisely the amount of the dividends.

The question is whether the dividends received under these circumstances and in this manner by the Southern Pacific Company were taxable as income of that company under the Income Tax Act of 1913.[1]

The act provides in § II, paragraph A, subdivision 1 (38 Stat. 166): "That there shall be levied, assessed, collected and paid annually upon the entire net income arising or accruing from all sources in the preceding calendar year" to every person residing in the United States a tax of 1 per centum per annum, with exceptions not now

---

[1] In addition, a question was made in the District Court as to a special dividend declared by the Central Pacific out of the proceeds of sale of certain land on Long Island, taken in satisfaction of a debt and sold in December, 1913. As to this, however, no argument is submitted by plaintiff in error, the facts are not clear, and we pass it without consideration.

material. By paragraph G (a) (p. 172), it is provided: "That the normal tax hereinbefore imposed upon individuals [1 per cent.] likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation . . . organized in the United States," with other provisions not now material.

It is provided in paragraph G (b), as to domestic corporations, that such net income shall be ascertained by deducting from the gross amount of the income of the corporation (1) ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals and the like; (2) losses sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation by use, wear and tear of property, if any, and in the case of mines a certain allowance for depletion of ores and other natural deposits; (3) interest accrued and paid within the year upon indebtedness of the corporation, within prescribed limits; (4) national and state taxes paid. It will be observed that moneys received as dividends upon the stock of other corporations are not deducted, as they are in computing the income of individuals for the purpose of the normal tax under this act (p. 167), and as they were in computing the income of a corporation under the Excise Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 113, § 38.

By paragraph G (c), the tax upon corporations is to be computed upon the entire net income accrued within each calendar year but for the year 1913 only upon the net income accrued from March 1 to December 31, to be ascertained by taking five-sixths of the entire net income for the calendar year.

The purpose to refrain from taxing income that accrued prior to March 1, 1913, and to exclude from con-

sideration in making the computation any income that accrued in a preceding calendar year, is made plain by the provision last referred to; indeed, the Sixteenth Amendment, under which for the first time Congress was authorized to tax income from property without apportioning the tax among the States according to population, received the approval of the requisite number of States only in February, 1913. *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 581; 158 U. S. 601, 637; *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1, 16.

We must reject in this case, as we have rejected in cases arising under the Corporation Excise Tax Act of 1909 (*Doyle* v. *Mitchell Brothers Co.*, *ante*, 179, and *Hays* v. *Gauley Mountain Coal Co.*, *ante*, 189) the broad contention submitted in behalf of the Government that all receipts—everything that comes in—are income within the proper definition of the term "gross income," and that the entire proceeds of a conversion of capital assets, in whatever form and under whatever circumstances accomplished, should be treated as gross income. Certainly the term "income" has no broader meaning in the 1913 Act than in that of 1909 (see *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 416, 417), and for the present purpose we assume there is no difference in its meaning as used in the two acts. This being so, we are bound to consider accumulations that accrued to a corporation prior to January 1, 1913, as being capital, not income, for the purposes of the act. And we perceive no adequate ground for a distinction, in this regard, between an accumulation of surplus earnings, and the increment due to an appreciation in value of the assets of the taxpayer.

That the dividends in question were paid out of a surplus that accrued to the Central Pacific prior to January 1, 1913, is undisputed; and we deem it to be equally clear that this surplus accrued to the Southern Pacific Company prior to that date, in every substantial sense

pertinent to the present inquiry, and hence underwent nothing more than a change of form when the dividends were declared.

We do not rest this upon the view that for the purposes of the Act of 1913 stockholders in the ordinary case have the same interest in the accumulated earnings of the company before as after the declaration of dividends. The act is quite different in this respect from the Income Tax Act of June 30, 1864, c. 173, 13 Stat. 223, 281, 282, under which this court held, in *Collector* v. *Hubbard*, 12 Wall. 1, 16, that an individual was taxable upon his proportion of the earnings of the corporation although not declared as dividends. That decision was based upon the very special language of a clause of § 117 of the act (13 Stat. 282) that "the gains and profits of all companies, whether incorporated or partnership, other than the companies specified in this section, shall be included in estimating the annual gains, profits, or income of any person entitled to the same, whether divided or otherwise." The Act of 1913 contains no similar language, but on the contrary deals with dividends as a particular item of income, leaving them free from the normal tax imposed upon individuals, subjecting them to the graduated surtaxes only when received as dividends (38 Stat. 167, paragraph B), and subjecting the interest of an individual shareholder in the undivided gains and profits of his corporation to these taxes only in case the company is formed or fraudulently availed of for the purpose of preventing the imposition of such tax by permitting gains and profits to accumulate instead of being divided or distributed.[1] Our view of the effect of this act upon

---

[1] "For the purpose of this additional tax the taxable income of any individual shall embrace the share to which he would be entitled of the gains and profits, if divided or distributed, whether divided or distributed or not, of all corporations, joint-stock companies, or associations however created or organized, formed or fraudulently availed

dividends received by the ordinary stockholder after it took effect but paid out of a surplus that accrued to the corporation before that event, is set forth in *Lynch* v. *Hornby, post,* 339.

We base our conclusion in the present case upon the view that it was the purpose and intent of Congress, while taxing "the entire net income arising or accruing from all sources" during each year commencing with the first day of March, 1913, to refrain from taxing that which, in mere form only, bore the appearance of income accruing after that date, while in truth and in substance it accrued before; and upon the fact that the Central Pacific and the Southern Pacific were in substance identical because of the complete ownership and control which the latter possessed over the former, as stockholder and in other capacities. While the two companies were separate legal entities, yet in fact, and for all practical purposes they were merged, the former being but a part of the latter, acting merely as its agent and subject in all things to its proper direction and control. And, besides, the funds represented by the dividends were in the actual possession and control of the Southern Pacific as well before as after the declaration of the dividends. The fact that the books were kept in accordance with the provisions of the lease, so that these funds appeared upon

---

of for the purpose of preventing the imposition of such tax through the medium of permitting such gains and profits to accumulate instead of being divided or distributed; and the fact that any such corporation . . . is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business shall be *prima facie* evidence of a fraudulent purpose to escape such tax; but the fact that the gains and profits are in any case permitted to accumulate and become surplus shall not be construed as evidence of a purpose to escape the said tax in such case unless the Secretary of the Treasury shall certify that in his opinion such accumulation is unreasonable for the purposes of the business." (38 Stat. 166, 167.)

the accounts as an indebtedness of the lessee to the lessor, cannot be controlling, in view of the practical identity between lessor and lessee. Aside from the interests of creditors and the public—and there is nothing to suggest that the interests of either were concerned in the disposition of the surplus of the Central Pacific—the Southern Pacific was entitled to dispose of the matter as it saw fit. There is no question of there being a surplus to warrant the dividends at the time they were made, hence any speculation as to what might have happened in case of financial reverses that did not occur is beside the mark.

It is true that in ordinary cases the mere accumulation of an adequate surplus does not entitle a stockholder to dividends until the directors in their discretion declare them. *New York, Lake Erie & Western Railroad* v. *Nickals,* 119 U. S. 296, 306; *Gibbons* v. *Mahon,* 136 U. S. 549, 558. And see *Humphreys* v. *McKissock,* 140 U. S. 304, 312. But this is not the ordinary case. In fact the discretion of the directors was affirmatively exercised by declaring dividends out of the surplus that was accumulated prior to January 1, 1913; it does not appear that any other fair exercise of discretion was open; and the complete ownership and right of control of the Southern Pacific at all times material makes it a matter of indifference whether the vote was at one time or another. Under the circumstances, the entire matter of the declaration and payment of the dividends was a paper transaction to bring the books into accord with the acknowledged rights of the Southern Pacific; and so far as the dividends represented the surplus of the Central Pacific that accumulated prior to January 1, 1913, they were not taxable as income of the Southern Pacific within the true intent and meaning of the Act of 1913.

The case turns upon its very peculiar facts, and is distinguishable from others in which the question of the identity of a controlling stockholder with his corporation has been

raised. *Pullman Car Co.* v. *Missouri Pacific Ry. Co.,* 115 U. S. 587, 596; *Peterson* v. *Chicago, Rock Island & Pacific Ry. Co.,* 205 U. S. 364, 391.

> *Judgment reversed, and the cause remanded for further proceedings in conformity with this opinion.*

MR. JUSTICE CLARKE dissents.