CHARLES J. CANFIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM R. THORSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 34131, 38095.   Promulgated June 12, 1931.

*Edwin H. Cassels, Esq.*, and *Andrew L. Campbell, C. P. A.*, for the petitioners.

*Harold Allen, Esq.*, and *Willis R. Lansford, Esq.*, for the respondent.

700

SEAWELL: The applicable law in the instant case is found in the Revenue Act of 1921 and reads as follows:

SEC. 201. (a) That the term "dividend" when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, * * *

(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed.
\* \* \*

The petitioners contend that the difference between the total of the profits for the several years beginning with March 1, 1913, down to and including April 14, 1923, and the losses for the years in which losses were sustained in such period is the total " accumulated since February 28, 1913." That difference is shown to be $2,050,435.93. They insist that the surplus on February 28, 1913, of $4,332,684.78 represents earnings and profits accumulated prior to March 1, 1913, and, being such, are by the specific provisions of section 201 (b) of the Act exempt from the tax; that the surplus so created and existing can not be changed by any subsequent event; and that *subsequent* losses would have to be made good from *future* earnings or profits before there could be any earnings or profits " accumulated since February 28, 1913," which, when distributed as dividends, would be subject to tax. In other words, the petitioners do not accept the interpretation of the meaning of the word " accumulated " as used in the phrase " accumulated since February 28, 1913," as considered in O. D. 610, C. B. 3, p. 24, and A. R. M. 82, C. B. 3, p. 36, and as likewise construed by the respondent and applied in the instant cases.

The respondent in making his determination excludes from consideration for the period " since February 28, 1913," the losses sustained in the year ended February 28, 1915, of $193,139.67, and in the year ended February 29, 1916, of $211,707.32. To March 1, 1913, surplus of $4,332,684.78, he adds the profits for the year ended February 28, 1914, of $4,594.62, making a total of $4,337,279.40, from which he deducts the sum of the losses which occurred in the years ended February 28, 1915, and February 29, 1916, amounting to $404,846.99, still leaving a surplus of $3,932,432.41 on February 29, 1916.

After February 29, 1916, there are no further losses shown, only profits which from such date to April 14, 1923, the evidence indicates, amount to $2,450,658.30, which respondent considers the total earnings or profits from February 28, 1913, to April 14, 1923. From such amount respondent deducts the total of dividends, $1,290,000, paid prior to April 14, 1923, leaving taxable earnings or profits of $1,160,-658.30 to be appropriated towards the payment of the April 14, 1923, dividend of $5,100,000. The difference, $3,939,341.70, between the $1,160,658.30 and the $5,100,000 declared and paid as a dividend April 14, 1923, represents, so respondent contends, the portion of the dividend of April 14, 1923, paid out of the earnings or profits which

constituted part of the surplus accumulated prior to March 1, 1913, and is tax-exempt as dividends in the hands of the recipient stockholders.

Of the dividend of $5,100,000 paid April 14, 1923, the petitioner Canfield received $204,000 and the petitioner Thorsen, $1,111,800, and if the respondent's method of tax computation is correct, each of the petitioners is taxable on 22.75 per cent of the dividend so received instead of on the larger percentage originally asserted by the respondent, but since conceded by the respondent to be incorrect.

It is ably and plausibly argued in behalf of petitioners that the respondent has erred in his method of computation of the deficiency in tax and numerous authorities are cited to support such contention.

In considering the question it should be constantly borne in mind that in the instant cases the West Side Lumber Company on March 1, 1913, had a surplus of $4,332,684.78, in addition to its capital of $1,500,000.

In the year ended February 28, 1914, the company made a profit of $4,594.62 and if it had then, out of its total earnings or surplus, declared a dividend and made distribution in excess of the $4,594.62 and less than the entire surplus, the difference between the $4,594.62 and the dividend so declared would not have been taxable in the hands of stockholders, but only the amount of the earnings, $4,594.62, accumulated *since* March 1, 1913, would have been taxable. In such circumstances there would apparently be no disagreement between the petitioners and the respondent as to the taxable amount and there appears to be no objection on the part of the petitioners to the manner in which the earnings or profits for the year ended February 28, 1914, were dealt with by respondent in his computation. How the losses occurring in the years ended on the last days of February, 1915 and 1916, are to be considered in determining the amount of " earnings and profits accumulated since February 28, 1913," under section 201 (b) of the Act, is the real issue between the parties.

In the years ended on the last days of February, 1915 and 1916, the West Side Lumber Company sustained losses aggregating $404,846.99. At the time such losses were sustained, however, they did not in fact produce an operating deficit, for the reason there were *then* the $4,594.62 above mentioned and prior undistributed accumulated earnings or profits constituting a surplus much greater in amount than such losses and made good the same, leaving thereafter a surplus on the last day of February, 1916, of $3,932,432.41. The capital of $1,500,000 was not impaired by such losses.

The evidence shows there were no losses by the West Side Lumber Company after the year ended February 29, 1916; that its total

earnings March 1, 1916, to April 14, 1923, were $2,450,658.30 and there were dividend distributions of $1,290,000 prior to the latter date, on which date a dividend of $5,100,000 was declared and distributed to its stockholders, of which petitioners were two, receiving the amounts indicated in our findings of fact.

In support of petitioners' insistence that the respondent erred in his method (fully set forth in the evidence) of computing their taxable income for the year in issue, decisions in numerous cases are cited. We do not deem it necessary to discuss in detail all the cases cited and relied on by the petitioners. The questions involved and the facts stated in many of the cases are quite different from those in the instant cases. We will, however, comment very briefly on some of such cases, though none, in our opinion, is controlling.

*Mutschler Bros. Co.*, 12 B. T. A. 731, is a case concerning the restoration of capital impairment through undivided profits and involves a question of invested capital and the brief of the petitioners states the decision therein followed the decision in *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215. The facts and basic principles, however, are not the same as in the instant cases and, in our opinion, do not warrant the interpretation placed upon them by petitioners.

*Southern Pac. Co.* v. *Lowe*, 247 U. S. 330, involved surplus accumulations which accrued to a corporation prior to January 1, 1913, and were in the circumstances of that case held to be capital and not income, and does not distinguish between an accumulation of surplus earnings and the increment due to an appreciation in value of the assets of the corporation.

The case of *Park* v. *Gilligan*, 293 Fed. 129, involved a distribution as a dividend of the proceeds of a chose in action arising prior to March 1, 1913. It was held therein that an amount received in 1916 in settlement of a claim for damages existent on March 1, 1913, is not profit arising subsequent to that date. All current earnings having been distributed previously, those distributed to the shareholders after March 1, 1913, were held not to constitute a taxable dividend under the Revenue Act of 1916.

*Crystal Ice Co.*, 14 B. T. A. 682, involved consideration of the effect on invested capital of the payment of dividends where a deficit exists due to operation losses, the dividends having been paid before such deficit was made good. The case is not like the instant cases and no authority in support of petitioners' contention.

The case of *J. L. Washburn*, 16 B. T. A. 1091, is not in point, for the reason that it involves the taxability of a dividend where on the date of the distribution the corporation paying the same had a deficit in its surplus account.

In *Louise Glassell Shorb*, 22 B. T. A. 644, we indicated our opinion of the correctness of certain rulings of the Bureau of Internal Revenue in the matter of determining whether certain corporate distributions were taxable dividends and among the number of such rulings was G. M. C. 3532, C. B. VII–1, p. 190, in compliance with which the respondent has determined the taxability of distributions made by the West Side Lumber Company to petitioners in the instant cases.

The respondent, in support of his position and determination herein, relies on the case of *Blair* v. *United States*, 63 Ct. Cls. 193 (certiorari denied, 275 U. S. 546), upon which he also relied in the *Shorb* case, *supra*, and in which case we held that the *Blair* case was not applicable and was distinguishable therefrom on the facts. In the *Washburn* and *Shorb* cases, *supra*, at the date of the distribution in the taxable years in question there were in fact no accumulated earnings or profits, no surplus from which to pay dividends and the distributions were, therefore, held to be made out of capital and did not constitute taxable income to the recipients.

In the instant cases, there was no operating deficit, but, at the time the losses aggregating $404,846.99 occurred in the taxable years of 1914 and 1915, there was an undivided surplus of several million dollars, mostly accumulated prior to March 1, 1913, and after which date there were accumulated earnings or profits in excess of all the dividends distributed to the stockholders prior to the $5,100,000 dividend paid April 14, 1923, of which dividend only a portion, as heretofore indicated, was determined taxable by the respondent. In the *Blair* case, *supra*, the corporation, as in the instant cases, had a surplus March 1, 1913, which was reduced by losses occurring in 1913, 1914 and 1915, creating a deficit December 31, 1915, which was overcome by earnings in 1916, 1917 and 1918, leaving a balance of accumulated earnings of the latter three years, more than sufficient to pay the dividend declared December, 1918, which was held to be taxable income in the hands of the recipient stockholders.

The situation in the instant cases is similar in that the West Side Lumber Company had a surplus March 1, 1913, with losses in the two following years and earnings thereafter in the subsequent years more than sufficient to pay all dividends prior to that of April 14, 1923, of $5,100,000, and to the extent it was insufficient to pay said dividend, the amount received by petitioners was by the respondent considered exempt from income tax, being held no part of the " earnings or profits accumulated since February 28, 1913."

The respondent has conceded that his computation should be revised to show that the dividend paid by the West Side Lumber Company on April 14, 1923, was 22.75 per cent taxable instead of 28.217 per cent taxable, but insists upon the application in the instant

cases of the principle heretofore approved as indicated in the *Shorb* case, *supra*, and sustained in the *Blair* case, *supra*.

We are of the opinion that the deficiencies proposed should be recomputed on the basis of corrected facts and in accordance with the application of the principle contended for by the respondent, which we hold to be correct.

*Judgment will be entered in each case under Rule 50.*