*1121 OPINION.
Disney:
(1) The first question for our consideration and determination is whether or not the transactions here involved and set forth in our findings of fact constitute a sale of the securities involved to the Houston Land & Trust Co., as contended by petitioners.
The evidence is somewhat confusing and conflicting, but when all the facts and circumstances are carefully weighed and considered, looking through form to substance, we are of the opinion and hold that there was no sale of the said securities to the Houston Land & Trust Co.
After the incorporation of the Mount Rose Co., R. C. Kuldell decided to transfer the securities to that company, and it was to the secretary of that company that he took a series of cards descriptive of the securities which he desired to transfer to the “Mount Rose Land Corporation.” This corporation was, later, the successor to the Mount Rose Co., which plainly indicates that the witness Kuldell intended to designate the Mount Rose Co., and not the Houston Land & Trust Co. His written instructions to the Houston Land & Trust Co., which were followed, indicate clearly that it was his desire to transfer to the Mount Rose Co. In his written instructions the Trust Co. was not directed to purchase for itself, but for the Mount Rose Co. “Bought slips” were to be issued, not for the Houston Land & Trust Co., but for the Mount Rose Co. They were so issued and confirmed. The price of purported sale by R. C. Kuldell and purported purchase by the Mount Rose Co. was the same — the closing price of May 31, 1930. The purchase and sale confirmation slips show the transaction made as of May 31, 1930, consonant with his instructions, and the Mount Rose Co., claiming loss on its income tax return on certain of the securities, stated on oath they were purchased by the Mount Rose Co. on May 31, 1930, which indicates strongly that the written instructions and purchase and sales slips reflect the true situation— a transfer to the Mount Rose Co., not to the Houston Land & Trust *1122 Co. The Houston Land & Trust Co.’s record showed its cashier’s check, though issued to R, C. Kuldell, to have been purchased by the Mount Rose Co.
The bonds passed at $154,991.51. This includes $2,712.76 interest thereon, computed to May 31. The sale slips show the rate and the periods covered by the interest. Interest to June 5, 1930, at the same rate, would have been $160.46 additional. R. C. Kuldell collected m> interest after the sale. By $160.46 interest, therefore, the Houston Land & Trust Co. would have profited if it had in fact been a transferee of the bonds. Such a gratuity is not consistent with an actual sale. That company itself understood the securities were not to be retained as its own, but would be immediately transferred to the Mount Rose Co., designated by R. C. Kuldell, which was done with no profit or commission whatever to the Houston Land & Trust Co. Only one transfer tax was paid, and the only record of transfer of securities is to the Mount Rose Co.
We find it impossible to conclude that there was any intent to pass title to the Houston Land & Trust Co., and we hold that there was no; sale to that company, but that that company acted only as agent for petitioners in passing title to the Mount Rose Co.
(2) Did petitioners sustain a deductible loss in 1930 on the stocks and bonds involved herein by reason of their transfer to the Mount Rose Co. ?
The transactions which brought about a transfer of the securities to the Mount Rose Co. occurred almost simultaneously on June 5, 1930. In the transactions and transfer no actual money changed hands.
Section 112 (b) (5) of the Revenue Act of 1928 provides:
No gain or loss sliall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.
The community securities involved herein were transferred to the newly organized Mount Rose Co., and the interest of each of petitioners in its stock which was issued to them was substantially the same as their respective interests in the securities transferred, over which they immediately after the transfer had absolute control, through control and ownership of more than 80 percent of the stock of the corporation.
In the case of Labrot v. Burnet, 57 Fed. (2d) 413, affirming the Board, 18 B. T. A. 332, an interpretation of section 202 (c) (3) of the Revenue Act of 1921, corresponding to section 112 (b) (5) of *1123 the Revenue Act of 1928, was involved. It was there held that a husband and wife who acquired a farm as partners and thereafter organized a corporation controlled by themselves, to which they claimed to have sold the farm at a loss, could not deduct the loss from income. The Court of Appeals of the District of Columbia quoted the Board with approval and said:
The Board of Tax Appeals, in considering the application of that section to this ease said: “The substance of the transaction is that the partnership exchanged the farms for stock of the corporation, and that after the exchange the partnership was in control of the corporation, as the word control is used in the section of the statute just quoted. We are of opinion that the transaction is essentially one of the kind in which Congress did not intend for the purposes of taxation to recognize either gain or loss, and that we should be governed by its substance and not its form.” With that reasoning of the Board of Tax Appeals we agree.
In transactions like the one before us, substance and not form determines the applicability of the taxing act. Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133; U. S. v. Phellis, 257 U. S. 168, 42 S. Ct. 63, 66 L. Ed. 180.
The only thing which R. C. Kuldell and wife received in consideration for the transfer of securities was stock in the Mount Rose Co. They received no money. The $463,417.65 check given the Mount Rose Co. was entered on the journal voucher as “capital surplus.” This transfer took place within three weeks after the organization of the corporation and upon the same day that R. C. Kuldell’s earlier check for $10,000 was deposited. Under such circumstances, the securities were the consideration for the capital stock. Article 67 of Regulations 74, applicable to 1930 taxes, provides in effect that voluntary payments by a stockholder to a corporation which are credited to surplus “represent an additional price paid for the shares of stock held by the individual shareholders.” In W. F. Bavinger, 22 B. T. A. 1239, citing authorities, we held that where a stockholder paid an obligation due from a corporation for the purpose of protecting it from suit and protecting his interest therein “the payment * * * must be regarded as additional cost of the petitioner’s stock.”
The cost, then, to R. C. Kuldell and wife, of the stock in the Mount Rose Co., was the securities transferred, which was added to the $10,000 check, which, however, was deposited and put' through the bank only in connection with the transfer of these securities. R. C. Kuldell is therefore seen to have paid out no money upon the check, which went through the form of payment only when and because of the transfer of the securities. Plainly this was an exchange and not a sale to the Mount Rose Co. Since there had been, as we hold, no sale to the Houston Land & Trust Co., the cashier’s check to R. C. *1124 Kuldell, the deposit thereof permitting passage through the bank of the checks for $10,000 and $463,417.65, and the two checks for $154,991.51 and $318,426.14 from the Mount Rose Co., totaling $473,-417.65, to the Houston Land & Trust Co., are seen to constitute mere artifice for conveying the securities to the Mount Rose Co. There was no contribution of cash to the Mount Rose Co., for petitioners realized no cash, there being in fact no sale to the Houston Land & Trust Co. Even if it were considered that the securities were a contribution to capital surplus, instead of transferred for stock, petitioners would sustain no deductible loss.
. Petitioners owned the securities before the said transactions of June 5, 1930, and immediately thereafter, though the title to the securities was in the Mount Rose Co., they were in control of the corporation by virtue of their ownership of practically all, more than 80 percent of, its stock, in substantially the same proportions in which they had owned the securities transferred.
We are, therefore, further of the opinion and hold that the petitioners are not entitled to any deductible losses by reason of the transfer of securities to the Mount Rose Co. as shown herein, and the determination of the respondent in disallowing said alleged losses is accordingly approved.
Reviewed by the Board.

Decision will be entered for the respondent.