## WAGNER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6951.

Circuit Court of Appeals, Ninth Circuit.

March 13, 1933.

Claude I. Parker, John B. Milliken, and George H. Koster, all of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. U. S. Atty. Gen., and A. H. Conner, John G. Remey, and Morton K. Rothschild, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and John R. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a decision of the United States Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in determining that there is a deficiency of $13,380.44 in the decedent's income tax for 1920.

A summary of the board's findings of fact follows: In 1911 the decedent and Ernest J. Schweitzer were the owners of the stock of the Wagner-Woodruff Corporation, which was engaged in the business of manufacturing and selling electric lighting fixtures in Los Angeles, Cal.

In 1912 Schweitzer and the decedent, working in the factory of the Wagner-Woodruff Corporation, invented an indirect electric lighting fixture that they called the "Briterlite." This was a lamp mounted in a globe of translucent material and having above it a downwardly reflecting reflector of curved contour so as to diffuse the light downward. These lights were being manufactured and sold to a very limited extent in 1912 and 1913. In January and February, 1913, the decedent and Schweitzer had obtained a contract for the production and installation of a number of Briterlite fixtures.

The two inventors in the latter part of 1912 consulted a patent attorney, who caused an examination of the records of the Patent Office to be made, and rendered to the decedent and Schweitzer a report as to the patentability of the Briterlite invention. He advised the two inventors that the Briterlite did not infringe the original Guth patent, covering the Brascolite, which in 1912 and 1913 was the most popular of these types of fixtures and was in great demand. The Guth patent had been originally in litigation and the original claims were held to a certain limitation. Subsequently, an application was made by the owner of the Guth patent for a reissue or amended patent on the Guth invention, and a reissue was granted. The result was that, while the Guth patent was sustained generally, the rights of the decedent and Schweitzer could not be cut off because they were intervening rights, the decedent and his co-inventor having invested their money, made their application for patent, and gone into actual manufacture of the Briterlite. These two inventors were thus able to continue in the manufacture and sale of the Briterlite without regard to the fact that the reissue of the Guth patent shut out others who were not licensed. The only fixture in competition with the Brascolite that did not infringe the Guth patent was the

Briterlite, because of the intervening rights of the decedent and Schweitzer. The Briterlite was an improvement over other fixtures of the same type and could be sold readily in competition with them.

An application for patent covering the Briterlite fixture was filed some time during the year 1914, and a patent was granted about September 2, 1915.

The Briterlite was made in about eight different sizes and styles. In 1913 the best seller was marketed for from $18 to $20. In computing the sales list price for the Briterlite, the cost of labor and material was taken as a basic cost and 50 per cent. of this amount added for overhead. The retail selling price was double that amount.

In 1920 the demand for these indirect lighting fixtures was not as great because a new type of glass, thin in texture, had been invented, so as to allow maximum rays of light to pass entirely through the glass. This was very cheap to market.

In 1920 the decedent and Schweitzer sold the patent on the Briterlite fixture to the Wagner-Woodruff Corporation for $85,000. They each owned one-half interest in this patent. The respondent determined that the decedent derived an income of $42,500 from this transaction.

The respondent notified the petitioner that the former's investigation of the income tax filed by the decedent for 1920 disclosed a deficiency in tax in the amount above stated. The petitioner, as the decedent's executrix, filed a petition before the Board of Tax Appeals, contending that the respondent erred in his determination. Thereafter the board promulgated its findings of fact and opinion, which are reported in 23 B. T. A. 879.

The decedent had claimed that the fair market price of the invention on March 1, 1913, exceeded the proceeds received from its sale and that, therefore, no profit was realized from the sale. The respondent contended that the invention had no value as of that date, and that, therefore, the entire amount received in 1920, of $42,500, was taxable as profit. The board concluded that the evidence does not establish a fair market value for the invention as of March 1, 1913.

The question, therefore, is whether there is any evidence or support for the board's conclusion, or whether the evidence conclusively proves a fair market value of the invention as of March 1, 1913, so as to overcome the presumptive correctness of the Commissioner's determination that the invention had no fair market value on that date. There is also a question as to whether the board erred in excluding certain opinion evidence as to value.

■ There was no error in excluding this opinion evidence. Even if the witnesses were qualified to express an opinion as to the value of the invention on March 1, 1913, their testimony was given on the supposition that the owners had the *exclusive* right to manufacture and sell the fixture. In fact, the question propounded to one witness was as follows: "What, in your opinion, was the fair market value as of March 1, 1913, of the Briterlite invention and the exclusive right to manufacture and sell under that particular invention?"

Phrased differently, the same question was asked of another witness, as follows: "Assuming that you had, or that you could purchase, at [on] March 1, 1913, or thereabouts, a right, a patent or an invention, together with the exclusive right to manufacture and sell that patent or invention covering a light fixture, which was superior to Brascolite at that time; what would you consider, or what in your opinion would be the fair market value of a product (property) at that time, of the product (property) that was being offered to you for sale or for purchase?"

Again, the question was thus framed: "Assuming that the Briterlite invention carried with it the exclusive rights to manufacture and sell the Briterlite fixture, which was a lighting fixture superior to other indirect lighting fixtures in existence on or about March 1, 1913, what in your opinion would be the fair market value of March 1, 1913, of that Briterlite invention?"

From all these forms of question, as well as elsewhere in the record, it is clear that the theory upon which the petitioner seemed to rely before the board, and which is urged here, is that Wagner and Schweitzer, the inventors, before the application for or the issuance of the patent, had the exclusive right to manufacture, use, and vend the light fixture.

Such is not the law. Invention does indeed confer upon the originator the right to "make, use, and vend" the article; but this is far from conferring upon him the *exclusive* right to make, use, and vend it.

This entire question was fully considered by this court in the recent case of Six Wheel Corporation v. Sterling Motor Truck Company of California, 50 F.(2d) 568, 570, 571. Among the many cases we there quoted or

cited was that of Gayler v. Wilder, 10 How. (51 U. S.) 477, 494, 13 L. Ed. 504, in which the Supreme Court said: "Now the monopoly granted to the patentee is for one entire thing; it is the exclusive right of making, using, and vending to others to be used, the improvement he has invented, and for which the patent is granted. The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes."

Again, in Walker on Patents (6th Ed.), vol. 1, § 12, p. 14, we find the rule thus stated: "It has often been asserted that, according to the principles of universal equity, an inventor has an exclusive property in his invention. Independent of statute law, no such right exists. He has no such exclusive property any longer than he keeps it secret; for no one who first makes any discovery can thereby acquire the right to prevent others from making and using the same discovery. He may conceal his discovery from the world, for no one can compel him to disclose his secret; but the moment he discloses it, he abandons his exclusive property in it, and others acquire the right to use the invention. The exclusive right to use an invention after disclosure can exist only by virtue of some statute law, enacted by the legislature as the representative of the people."

The petitioner consequently is laboring under a misapprehension in her repeated assertion that the inventors, on March 1, 1913, "had rights tantamount to rights under a patent."

Such testimony as was given, other than under the hypothetical question above discussed, was, in our opinion, insufficient to enable the board to arrive at a fair value of the invention as of March 1, 1913. In other words, aside from the opinion evidence, there was no evidence that would have justified the board in fixing such valuation.

The Commissioner's determination is prima facie correct, and the burden is on the petitioner to show that such determination is erroneous. Wickwire v. Reinecke, 275 U. S. 101, 105, 48 S. Ct. 43, 73 L. Ed. 184; United States v. Rindskopf, 105 U. S. 418, 422, 26 L. Ed. 1131; American Trust Co. v. Commissioner (C. C. A. 9) 31 F.(2d) 47, 49; Green's Advertising Agency v. Blair (C. C. A. 9) 31 F.(2d) 96, 98. The testimony offered by the petitioner was insufficient to show error in the Commissioner's determination.

Accordingly, the decision of the Board of Tax Appeals is affirmed.

Decision affirmed.