### OLD COLONY TRUST CO. OF BOSTON v. COMMISSIONER OF INTERNAL REVENUE.

No. 2871.

Circuit Court of Appeals, First Circuit.

March 14, 1934.

As Modified on Denial of Rehearing April 6, 1934.

A. P. Lowell (of Burnham, Bingham, Pillsbury, Dana & Gould), of Boston, Mass., for petitioner.

D. Louis Bergeron, Sp. Asst. to Atty. Gen. (Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

WILSON, Circuit Judge:

This is an appeal from a decision of the Board of Tax Appeals involving an individual income tax for the year 1928. The issue is whether a sale of stocks in November, 1928, was a sale of capital assets, or a sale of stocks resulting in taxable net income.

The facts out of which the issue arose are as follows:

In 1926 one Joseph P. Kennedy made arrangements to purchase 40,000 shares of class A common stock and 8,000 shares of class B preferred stock of the R. C. Pictures Corporation, the name of which was afterward changed to the F. B. O. Productions, Inc.—the corporation and stock will be hereinafter referred to as F. B. O. Co. and F. B. O. stock—for the sum of $1,160,000; and on February 5, 1926, and later on July 21, 1926, entered into an agreement with the petitioner's intestate, Guy W. Currier, for Currier to acquire 50 per cent. of this stock at a proportionate share of the cost.

On July 7, 1926, Currier and Kennedy jointly purchased 7,500 shares of F. B. O. class B common stock, at $4 per share, from Thompson and Poucher; and on November 18, 1926, purchased jointly 2,500 shares of F. B. O. class B common stock from one Williams at $12 per share.

Prior to October 19, 1927, they acquired jointly in equal shares for $30,000 the rights

in a motion picture called "The Moon of Israel," and on October 19 organized a corporation under the name of The Gower Street Company, hereinafter referred to as The Gower Co., and each subscribed for 5 shares of its capital stock of the par value of $100, which was issued to them for a cash payment of $1,000.

The rights in the moving picture, "The Moon of Israel," were then transferred by them to the new corporation for 300 shares of its capital stock, which was issued to Currier and Kennedy in equal amounts. The activities of The Gower Co., as far as appears in the record, were confined to receiving income from this picture, which was distributed through the F. B. O. Co. and in transactions concerning F. B. O. stocks.

On or about November 9, 1927, Currier and Kennedy jointly purchased 40,000 additional shares of F. B. O. class B common stock from one Powers at $7.50 per share.

On January 6, 1928, The Gower Co. purchased from Currier and Kennedy the 10,000 shares of F. B. O. class B common stock, purchased by them of Thompson, Poucher, and Williams, at $6 per share, or for the sum of $60,000, being the cost to Currier and Kennedy, and gave in payment to each of them the corporation notes for $30,000, payable on demand. On the same day The Gower Co. purchased of Currier and Kennedy the 40,000 shares of F. B. O. class B common stock which they purchased of Powers, at the price of $7.50 per share, or a total of $300,000, and gave in payment the corporation notes to each of them for $150,000, payable on demand.

On February 15, 1928, The Gower Co. sold to B. F. Keith Corporation, hereinafter referred to as the Keith Co., at $15 per share, the 40,000 shares of stock originally acquired by Currier and Kennedy of Powers, on which transaction The Gower Co. made a gain of $300,000.

On the same date The Gower Co. purchased from Currier and Kennedy the 40,000 shares of F. B. O. class A common stock, and the 8,000 shares of F. B. O. preferred stock for the sum of $890,000, payable in demand notes of the corporation, and assumed and agreed to pay the National City Bank, which held a claim on this stock, the sum of $270,000, thus making the purchase price of this stock $1,160,000, being the same as the original cost to Currier and Kennedy.

The F. B. O. class B common stock had no voting power, but, under an agreement or understanding with the Radio Corporation, when it acquired certain F. B. O. class B common stock, and with the Keith Co. when it acquired of The Gower Co. 40,000 shares of the F. B. O. class B common stock, and with the F. B. O. Co., the capital structure of the F. B. O. Co. was changed. The F. B. O. class A common stock was changed into 40,000 shares of no par value stock, all F. B. O. class B common stock was changed into no par value stock, the 8,000 shares of F. B. O. preferred stock was changed into 55,475 shares of no par value, and all the new no par value stock was given voting power. As an incident to the change, each holder of F. B. O. class B common stock was given an option to purchase a certain percentage of the new no par value stock, resulting from the change in the preferred stock, for each share of the old common stock held by him. By this arrangement 26,950 shares of the 55,475 shares of the no par value stock, resulting from the change in the preferred stock, were taken by others than Currier or Kennedy, The Gower Co. retaining 28,525 shares.

Prior to the changes in the capital structure of F. B. O. Co., The Gower Co. had acquired of others than Currier and Kennedy 10,654 shares of F. B. O. class B common stock, and also 3,500 shares of F. B. O. common stock purchased of one De Witt at $7 per share.

On March 1, 1928, and on July 7, 1928, The Gower Co. sold a total of 7,000 shares of the Thompson, Poucher, and Williams stock at $15 per share and paid the notes given to Currier and Kennedy at the time of the purchase of the shares of them.

On October 4, 1928, The Gower Co. was the owner of 3,000 shares of no par value F. B. O. stock, purchased by Currier and Kennedy of Thompson, Poucher, and Williams on July 7, and November 18, 1926, at an average of $6 per share; 40,000 shares of no par value F. B. O. stock converted from the original purchase of class A stock—according to the stipulation of facts—at $9 per share; 28,525 shares of no par value F. B. O. stock converted from the 8,000 shares of preferred stock at a cost to Currier and Kennedy of $411,370.90; and also 3,500 shares of no par value F. B. O. stock converted from class B stock purchased of De Witt by The Gower Co., as well as 10,679 shares purchased by The Gower Co. of others than Currier and Kennedy during the year 1928 and prior to October 4, 1928.

On October 4, 1928, The Gower Co. voted to sell to Currier and Kennedy the 3,000

shares originally purchased of Thompson, Poucher, and Williams; 40,000 shares of F. B. O. stock converted from the original purchase of class A stock by Currier and Kennedy on February 5, 1926; 28,525 shares of the converted preferred shares of F. B. O. stock acquired by Currier and Kennedy by their original purchase on February 5, 1926, and 3,475 shares of F. B. O. stock acquired by The Gower Co. directly of De Witt, all at the same price Currier and Kennedy purchased them, to be determined by the treasurer of The Gower Co.

By this transaction Currier received 37,500 shares of F. B. O. no par value stock for the sum of $406,844.45. In payment Currier and Kennedy gave up any notes each of them held of The Gower Co., and gave their individual notes for the balance payable on demand.

On November 25, 1928, Currier sold all his F. B. O. stock thus obtained by him from The Gower Co. at $35 per share. In reporting his income tax for that year, he reported as ordinary net income the difference in the cost of the De Witt shares, or $7 per share, and the selling price of $35, or a profit of $48,636 as subject to both normal and surtax.

As to the difference between the cost of the balance of the stock so acquired from The Gower Co. and the selling price of $35 per share, or a total gain of $857,019.55, he reported it as capital gain upon the theory that, since he and Kennedy were the owners of all the capital stock of The Gower Co. and the title to all the stock, except the shares acquired of De Witt, had been in the possession of him and Kennedy, or The Gower Co., since November 18, 1926, or more than two years prior to the sale on November 25, 1928, it had become capital assets under section 101 (c) (8) of the Revenue Act of 1928, 26 USCA § 2101 (c) (8).

The Commissioner, however, took the view that all the transfers to The Gower Co. by Currier or Kennedy were actual sales to a corporate entity and completed transactions, which prevented any claim that the securities had been held by Currier and Kennedy more than two years, and therefore the profit on the sale by Currier on November 25, 1928, must be treated as taxable income. The Board sustained the Commissioner and held that the entire profit of $857,019.55 was ordinary net income and subject to both a normal and surtax.

It is clear that the gain on the shares of stock acquired of De Witt and sold to Currier was taxable net income. The petitioner now admits in its brief that the stock originally acquired of Thompson, Poucher, and Williams and transferred to The Gower Co. was fully paid for by The Gower Co. when 7,000 of the 10,000 shares thus acquired were sold, rendering this a completed transaction, which stopped the running of the two-year period necessary to render this stock capital assets in the hands of Currier on November 25, 1928. But as to the 34,263 shares sold to Currier on October 9, 1928, which were acquired by Currier on February 5, 1926, or before July 21, 1926, the petitioner contends that, since their stock was never fully paid for in cash, there being on October 8, 1928, an outstanding note of $149,657.79 given by The Gower Co. to Currier in payment of the purchase of the original blocks of F. B. O. class A and preferred stock, either the time of the holding of the stock by Currier and Kennedy and the corporation, of which they held all the capital stock, should be tacked together, or that the notes given in payment were also capital assets, and the period during which Currier held the stock, added to the period the notes were held, constituted a two-year period within the meaning of section 101 (c) (8), so that the 34,625 shares of stock, when sold by Currier on November 25, 1928, was a capital asset and the gain was not taxable as net income.

The reasoning by which the petitioner reaches this conclusion is not clear. Either the transaction with The Gower Co. was mere form, and in substance the title to the stock remained, so far as the taxing statutes are concerned, in Currier, or else it was a completed purchase by a separate entity and fully paid for by the giving of the demand notes on October 9, 1928.

Cases involving reorganizations under the provisions of the Revenue Acts of 1926 and 1928, or the exchange of capital stock for securities, in which cases the transaction may be held to show no taxable gain, have little bearing on the transactions here. The issue in this case is not whether Currier received a taxable gain when the stock was transferred to him on October 9, 1928, but whether he acquired capital assets on that date, or what became capital assets on November 25, 1928, under section 101 (c) (8) of the Revenue Act of 1928, by reason of having been held by him for more than two years.

While unusual cases may require disregard of corporate form or substance as the facts may require, cases like Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62

L. Ed. 1142; Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133; Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, or Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087, cannot be regarded as laying down any general rule authorizing disregard of corporate entity in respect to taxation. These cases presented peculiar situations, and were determined upon consideration of them. Burnet v. Commonwealth Improvement Co., 287 U. S. 415, 419, 420, 53 S. Ct. 198, 77 L. Ed. 399.

For the same reason cases like Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886; United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Tsivoglou v. United States (C. C. A.) 31 F. (2d) 706; Schoenheit v. Lucas (C. C. A.) 44 F.(2d) 476; Hinkel v. Motter (D. C.) 39 F. (2d) 159, have little bearing on the issue in this case. Except the case of Shoenberg v. Burnet, 60 App. D. C. 381, 55 F.(2d) 543, none of the cases cited by either side involves an interpretation of section 101 (c) (8).

■■■ Ordinarily, a corporation and its stockholders are separate entities. Upon the facts disclosed in the record, we think The Gower Co. must be held to be a separate entity from the individuals, Currier and Kennedy. It not only purchased of them securities and paid for them with its demand notes, which it afterwards paid in full or in part, but it purchased stock of other parties and sold stock to other parties than Currier and Kennedy, from which it made a profit. It now holds stock purchased of other parties, with which neither Kennedy nor Currier had anything to do as individuals; and also holds the notes of Currier and Kennedy in part payment of the stock sold to them on October 9, 1928. There has been no reorganization of The Gower Co. or exchange of its capital stock for assets, to which section 101 (c) (8), subparagraphs A, B or C, or section 113 of the Revenue Act of 1928, 26 USCA §§ 2101 (c) (8), 2113, has any application.

If the gain on the sale of the Thompson, Poucher, and Williams stock was net income and taxable as such, because it was fully paid for by The Gower Co. and a completed transaction, and as such cannot be tacked on to the time this stock was held by the individuals to constitute capital assets under section 101 (c) (8), we think it must also be held that the sale of the balance of the stock to The Gower Co. by Currier and Kennedy must be treated as completed transactions, when they were in part paid for by a cancellation of notes of Currier and Kennedy given to the corporation, and in part by demand notes of the corporation. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 469, 53 S. Ct. 257, 259, 77 L. Ed. 428; Cortland Specialty Co. v. Commissioner (C. C. A.) 60 F.(2d) 937, 940.

In the Pinellas Ice & Cold Storage Co. Case the Supreme Court said:

"It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well secured, short-term notes (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed. We can discover no good basis in reason for the contrary view and its acceptance would make evasion of taxation very easy."

In the Cortland Specialty Co. Case the court said as to whether notes given in exchange for stock could be considered securities within the meaning of section 203 (e) of the Revenue Act 1926 (26 USCA § 934 (e), relating to reorganization:

"As no stock was issued against the transfer, the conditions for an exemption were not fulfilled unless the notes, all payable within fourteen months of the date of the transfer, and all unsecured, can be considered 'securities' under section 203 (e). Inasmuch as a transfer made entirely for cash would not be enough, it cannot be supposed that anything so near to cash as these notes payable in so short a time and doubtless readily marketable would meet the legislative requirements."

While these cases do not involve section 101 of the Revenue Act of 1928 (26 USCA § 2101), they clearly indicate the attitude of the courts where securities are transferred to a corporation—although the parties transferring the securities control the corporation through ownership of all its capital stock—not in exchange for capital stock, or as part of a plan of reorganization, but for demand notes of the corporation, and that in such cases it constitutes a completed transaction. If so, we think it breaks the continuity of the two-year period essential to create capital assets.

As the Supreme Court said of the petitioner's claim in Burnet v. Commonwealth Imp. Co., supra, page 420 of 287 U. S., 53 S. Ct. 198, 77 L. Ed. 399, we think the record

here fails to disclose circumstances sufficient to support the petitioner's claim.

Having held that the transaction between the Gower Co. and the decedent on October 9, 1928, was a sale of assets, and it being expressly stipulated by the parties that no dividends were declared by the corporation in the year 1928, the Board of Tax Appeals finding that the transaction of October 9 was in no part a distribution of assets in the form of a dividend but a sale of assets, is not overcome by the evidence. If the corporation or its officers had intended it in part as a dividend and a liquidation of capital investment, they could have easily so declared.

We think the petitioner's second contention that there was error in the Board's ruling on this point is without merit.

The order of the Board of Tax Appeals is affirmed.