## PICKWICK CORPORATION v. WELCH, former Collector of Internal Revenue.
### No. 6616.

District Court, S. D. California, Central Division.
Dec. 10, 1937.

Frank Mergenthaler, of Los Angeles, Cal., for plaintiffs.

Peirson M. Hall, U. S. Atty., E. H. Mitchell, Sp. Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., for Treasury Dept., all of Los Angeles, Cal., for defendant.

JENNEY, District Judge.

This action is brought to recover excise taxes alleged to have been illegally assessed and collected by the Commissioner of Internal Revenue or his agents. Jury trial was waived; and the case was submitted in part on stipulated facts, made a matter of record, and in part on oral testimony. The issues raised may be determined by considering the following circumstances developed from the agreed facts, the admissions in the pleadings, and the testimony of witnesses:

The Pickwick Corporation is a California corporation (hereinafter sometimes for convenience called the Corporation), which during the period from October, 1924, to February, 1928, owned 100 per cent. of the capital stock of the Pickwick Stages System, another California corporation (hereinafter sometimes for convenience called the System).

During this period the System owned and operated a motorbus transportation system, and the major part of its assets consisted of motorbusses and other operative property used in bus transportation. It had no terminals or large stations of its own, and maintained no repair or service shops except of minor importance.

During this same period the Corporation was the owner and operator of many hotels, stations, depots, and terminals

throughout California and the Western States, which facilities were used by the System in its transportation business. The Corporation likewise maintained regular shops for the purpose of repairing and servicing the equipment and rolling stock of the System, and handled large quantities of oil, gasoline, tires, and other items, which it supplied for consumption by the System. It owned practically no motor transportation rolling stock.

During all of this period the chief officers and directors of both companies were identical. They issued consolidated balance sheets and operating statements, and filed consolidated income tax returns with the federal government.

The Corporation, as is alleged by the plaintiffs and admitted by the defendant, acquired the stock of the System for the purpose of owning, operating, and controlling the motor transportation business of the System, so that, during the period above mentioned, the System was the instrumentality by which the Corporation controlled that business.

In November, 1924, the Corporation began the manufacture of bus bodies for use and consumption by the System alone and not for resale. Said bus bodies were in fact so used and consumed by that subsidiary. The Corporation continued to manufacture bus bodies during the entire period in question, and actually delivered a total of 72 of them to its subsidiary. These bodies were billed to the System at the aggregate price of $254,559.96; which figure included a profit to the Corporation of approximately 40 per cent. of the billing price.

In the latter part of 1924, or in the early part of 1925—in any event shortly after these manufacturing operations were started—two deputy collectors of internal revenue, Charles E. Brooks and T. F. Franklin, called upon the officers of the Corporation and informed them that such transfers of bus bodies—from the Corporation to the System—were intercompany transactions; and that the Corporation was not obligated under the law to make a return of sale thereof or to pay any excise tax thereon. Defendant admits the visit of the deputies upon the officers of the Corporation but claims that said deputy collectors informed the officers of the Corporation that the transfers of the bus bodies constituted taxable sales under the Revenue Act.

In the early part of 1928 the Commissioner of Internal Revenue determined that the transfers of these bus bodies were sales, and assessed against the Corporation a manufacturer's excise tax in the sum of $8,-611.34; together with the sum of $2,152.85, as a 25 per cent. penalty for failure to file a return; and also together with interest to May 21, 1928, in the sum of $1,545.13.

Subsequently, the Corporation filed a claim in abatement. The Commissioner remitted the penalty of 25 per cent. but rejected the claim in abatement as to the taxes and interest. The Corporation did not pay these assessments until the 23d day of February, 1929, at which time a 5 per cent. penalty was imposed by Galen H. Welch, the then collector of internal revenue. The Corporation paid to said collector a total tax, penalty, and interest to February 23, 1929, as follows:

Excise tax on bus bodies....... $8,611.34
Interest thereon through May 21, 1928 ...................... 1,545.13
Interest at the rate of 1% per month for eight months on said tax .......................... 812.52
Five per cent. penalty.......... 507.82

Total ...................$11,476.81

On or about February 3, 1931, the Corporation filed with said Galen H. Welch, as such Collector at Los Angeles, Cal., its written claim for refund of said excise tax, interest, and penalty; which claim was rejected in full by the Commissioner of Internal Revenue. This suit followed, action being instituted on behalf of plaintiff C. A. Sheedy, receiver of the Corporation, pursuant to leave so to do granted by the District Court of the United States in and for the Southern District of California, Central Division.

It was stipulated by the parties that no action upon the claim for refund had been taken before Congress or before any of the departments of the government of the United States, and that no action had been brought upon said claim for refund other than this action.

Defendant claims that the transactions between the companies constituted sales, and that as such they were subject to an excise tax under the terms of the Revenue Act of 1924 (43 Stat. 253) and under the terms of the Revenue Act of 1926 (44 Stat. 9).

The Revenue Act of 1924 provides in part as follows:

"Sec. 600. * * * there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentage of the price for which so sold or leased * * *

"(2) Other automobile chassis and bodies * * * except tractors, 5 per centum."

"Sec. 601(a) If any person who manufactures, produces, or imports any article enumerated in section 600, sells or leases such article to a corporation affiliated with such person within the meaning of section 240 of this Act, at less than the fair market price obtainable therefor, the tax thereon shall be computed on the basis of the price at which such article is sold or leased by such affiliated corporation." (43 Stat. 322, 323).

The Revenue Act of 1926 provides in part as follows:

"Sec. 600. There shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentage of the price for which so sold or leased—

"(1) Automobile * * * bodies * * * except automobile truck * * * bodies, automobile wagon * * * bodies, * * * 3 per centum." 44 Stat. 93.

Section 601(a) of this act of 1926, 26 U.S.C.A. § 1124 note, is identical in wording with the corresponding section of the 1924 act, above quoted.

Section 240(c) of the Revenue Acts of 1924 and 1926, 43 Stat. 288, 44 Stat. 46, respectively, reads as follows: "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests. * * *"

Regulations 47 of the Commissioner of Internal Revenue, revised in March, 1926, provide in part as follows:

"Art. 7. Tax payable by the manufacturer.—The tax is to be paid by the manufacturer on all sales made directly by him or through an agent. * * *

"A receiver or trustee in bankruptcy of a manufacturer conducting a business under court order is liable to the tax upon articles manufactured and sold by him. * * *

"Where a so-called sales agent or distributor is a separate corporation and the sale to it is absolute and at prices and under terms and conditions such as ordinarily obtain between persons dealing at arms length with no further payment or benefit accruing to the manufacturer upon resale or otherwise except the receipt of dividends on stock holdings, the taxable sale is that made by the manufacturer to such sales corporation even though all or substantially all of the stock of such sales corporation is held by or for the benefit of the manufacturer or the stockholders in the manufacturing corporation." * * *

"Art. 8. In the case of a conditional sale, where title is reserved in the vendor until payment of the purchase price in full, the tax attaches (a) upon such payment, or (b) when title passes if before completion of the payments, or (c) when, before completion of the payments, the dealer disposes of the sale by charging off by any method of accounting he may adopt the unpaid portion of the contract price, or (d), * * * or (e) when the vendor transfers to another his title to the article sold, or (f). * * *"

Plaintiffs claim that, under these sections, the excise tax is not levied upon the manufacture and consumption of bus bodies, but upon the sale or leasing of such articles by a manufacturer; that the Corporation manufactured the bus bodies and turned them over to its subsidiary, the System, not for resale or for leasing but for the purpose of consumption in the operation of its transportation system; and that they were used and consumed only in that service.

Plaintiffs further contend that the Corporation and the System constitute but a single economic unit, and that the transfer of bus bodies by parent to subsidiary, for consumption in the operation of the latter's business, did not constitute a "sale or lease" of bus bodies, within the meaning of the law above quoted; arguing that there is no difference between the case at bar and the one wherein a single company manufactures bus bodies in one of its departments and transfers them to another for use and not for sale or lease.

In support of their position plaintiffs cite S.T. 412 II—1 C.B. 283, in which is discussed a situation wherein the taxpayer operated a wholesale and a retail department of its business and made transfers from the former to the latter. This ruling says, in part, in connection with sales taxes: "In the opinion of this office there is no

provision of the statute which would authorize or permit the Commissioner to classify as a sale a transfer of merchandise from the wholesale to the retail department of a single company even though such departments are maintained as separate and distinct entities from an accounting standpoint and the transfers are reflected by appropriate book entries."

They cite also in support of their theory, relative to the treatment of affiliated corporations for income tax purposes, article 631, Regulations 69, of the Bureau of Internal Revenue, as follows: "Consolidated returns are based upon the principle of levying the tax according to the true net income of a single enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the net income of the branch forms a part of the net income of the entire organization."

Plaintiffs then contend that, when the stock of a subsidiary is owned or controlled by a parent corporation, and the subsidiary is a mere conduit or agent of the parent corporation, the corporate fiction should be disregarded in the interest of justice and equity—in other words, they say that the System was merely the alter ego of the corporation. The method of conducting operations, it is argued, the interlocking directorate and officers, the 100 per cent. control by the parent of the subsidiary, and the use of consolidated balance sheets, all show that the two companies were to all intents and purposes one operating unit. They cite in support of their position, among others, the following cases: Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133, 3 A.F.T.R. 2997; Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 542, 62 L.Ed. 1142, 3 A.F.T.R. 2989; Wenban Estate, Inc., v. Hewlett, 193 Cal. 675, 676, at page 696, 227 P. 723; H. H. Miller Industries Company v. Commissioner (C.C. A.) 61 F.2d 412, 11 A.F.T.R. 951.

The evidence, in connection with the transfer of the busses from the Corporation to the System and the manner of payment therefor, is not entirely satisfactory. While there is no direct evidence in the record that the subsidiary actually paid the parent company any particular item or items for the bus bodies, there is evidence that title passed and that they were charged to the System on the Corporation's books. Plaintiffs in their amended complaint (Paragraph VII) allege that "the bus bodies were manufactured by The Pickwick Corporation and transferred and delivered by it to the Pickwick Stages System"; and from the allegations contained in paragraph VI it appears that the Corporation had, during the entire period involved, no motor transportation rolling stock, but that all such equipment was owned by the System. Therefore there must have been a passing of title by the Corporation to the System. In several other places in the amended complaint it appears by plaintiffs' allegations that the bus bodies were manufactured by the Corporation and transferred and delivered to the System. These allegations are all admitted by the defendant's answer.

Revenue Agent Dodson's report (Defendant's Exhibit "A") states: "Beginning in 1924 the Company started building bus bodies to suit its own special requirements, and selling them to the operating company at about forty per cent. more than production cost. For the purpose of this audit this billing price was accepted as the fair market price obtainable and tax was computed on this basis." Total sales were shown by said exhibit to be $254,559.96 during the period in question. This Exhibit A was admitted in evidence with the oral stipulation of the parties that the plaintiffs did not thereby acquiesce in the conclusion that there was a sale or any resulting tax liability.

Exhibit B to plaintiffs' amended complaint, which is a letter from the Treasury to the Corporation under date of October 27, 1931, with reference to the claim for refund, contains also the following statement: "The evidence shows that the Pickwick Corp. manufactured automobile bus bodies and delivered its entire output to the Pickwick Stages System to be used in the latter's transportation business. It is also shown that you treated the transactions as sales and charged the operating company about forty per cent. more than production cost." There is little or no other evidence in the record on these points.

The Commissioner of Internal Revenue has determined that each transaction in question here between the companies was a sale under section 600 of the Revenue Acts

of 1924 and 1926, and has assessed and collected the tax here involved upon that basis. This is admitted by the pleadings.

It is fundamental that the assessment of a tax by the Commissioner of Internal Revenue is prima facie evidence of the correctness of the tax. This is true whether the tax in question is an excise tax or otherwise. United States v. Rindskopf, 105 U. S. 418, 26 L.Ed. 1131, 2 A.F.T.R. 2422; Wickwire v. Reinecke, 275 U.S. 101, 48 S. Ct. 43, 72 L.Ed. 184, 6 A.F.T.R. 7068; Duesenberg, Inc., v. Commissioner, 84 F.2d 921 (C.C.A.7th); Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, 14 A.F.T.R. 1194; Wagner v. Commissioner (C.C.A.9th, 1933) 63 F.2d 859, 12 A.F.T.R. 318.

In support of the proposition that these transactions do not constitute a "sale or lease," within the meaning of the Revenue Act, because the corporate entities of both the parent and the subsidiary should be disregarded in considering the transaction for taxation purposes, counsel for plaintiffs has cited a number of cases such as Gulf Oil Corporation v. Lewellyn, supra; Southern Pacific Co. v. Lowe, supra, etc., which involve income taxes of affiliated corporations. In our opinion these income tax cases stand upon a different footing from the case at bar.

The Congress, by legislation, and the Commissioner of Internal Revenue, by regulation, has recognized the fact that income taxes should be based upon the general principle of levying the tax according to the true net income of a single enterprise, even though the business is operated through more than one corporation. Section 240 of the Revenue Act of 1926, 44 Stat. 46; Section 142 of the Revenue Act of 1928, 45 Stat. 832; Regulations 69, article 631; Regulations 69, article 635; Regulations 74, article 734.

A Treasury regulation is, of course, merely the Treasury's interpretation of the statute; but it is authorized by the statute and is predicated upon an unusually favorable opportunity to determine the intent of the Congress. It is therefore entitled to respectful consideration and will not be overruled except for cogent reasons. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397, 9 A.F.T.R. 597.

The courts likewise have often recognized the fact that a corporation may be merely the alter ego of another corporation or of a person, and have frequently disregarded the corporate fiction. This is particularly true in cases involving intercompany dividends; as pointed out by the Supreme Court of the United States in Gulf Oil Company v. Lewellyn, supra, and as stated in Southern Pacific Co. v. Lowe, supra, as follows: "We base our conclusion in the present case upon the view that it was the purpose and intent of Congress, while taxing 'the entire net income arising or accruing from all sources' * * * to refrain from taxing that which, in mere form only, bore the appearance of income; * * * and upon the fact that the Central Pacific and the Southern Pacific were in substance identical because of the complete ownership and control which the latter possessed over the former, as stockholder and in other capacities. While the two companies were separate legal entities, yet in fact, and for all practical purposes they were merged, the former being but a part of the latter, acting merely as its agent and subject in all things to its proper direction and control."

Even in other than income tax matters— which are in a different category because of congressional action and Commissioner's Regulations—there are unusual circumstances in which courts have felt disposed or required to disregard the corporate form. In re Fox West Coast Theatres (Tally v. Fox Film Corporation) (C.C.A.9th 1937) 88 F.2d 212, certiorari denied 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363; Commerce Trust Co. v. Woodbury (C.C.A.) 77 F.2d 478, 487, certiorari denied 296 U.S. 614, 56 S.Ct. 134, 80 L.Ed. 435; Burnet v. Commonwealth Improvement Company, 287 U. S. 415, 53 S.Ct. 198, 77 L.Ed. 399, 11 A.F. T.R. 1099.

However, these cases cannot be regarded as laying down any general rule, authorizing disregard of corporate entity in respect of taxation—rather as instances when the court looked through mere form and regarded substance. Burnet v. Commonwealth Improvement Company, supra. The doctrine of corporate entity is one of substance and validity; it should be ignored with caution, and only when the circumstances clearly justify it. The theory of the alter ego has been adopted by the courts to prevent injustice, in those cases where the fiction of a corporate entity has been used as a subterfuge to defeat public convenience or to perpetuate a wrong; it should never be invoked to work an injustice, or to give an unfair advantage. Corning Glass Works v. Commissioner, 9 B.T.A. 771; Corning

Glass Works v. Lucas, 59 App.D.C. 168, 37 F.2d 798, 68 A.L.R. 736; Id., 281 U.S. 742, 50 S.Ct. 348, 74 L.Ed. 1155; Old Colony Trust Co., Executors, v. Commissioner (C. C.A.) 69 F.2d 699, 13 A.F.T.R. 761; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, 13 A.F.T.R. 1180.

█ A careful examination of the sections of the Revenue Acts of 1924 and 1926, which have been hereinbefore quoted, seems to indicate clearly that the Congress intended an excise tax to be paid upon the sale or leasing of a taxable article to an affiliate. Sections 600 and 601(a). We cannot see how, except by a sale, the ownership of these bus bodies was transferred from parent to subsidiary. Each transaction was at a profit to the Corporation. Each transfer was absolute, title passed and the charge against the System in the Corporation's books was such as would ordinarily obtain between persons dealing at arm's length. Section 240(c) of these Revenue Acts (quoted supra) leaves no doubt as to the existence of an affiliation between the Corporation and the System.

On the one hand, in dealing with *excise taxes,* Congress has said in section 601(a) of these Revenue Acts that the excise tax which the court is now considering shall be imposed upon intercompany transactions in bus bodies; and on the other hand, in dealing with *income taxes,* Congress has said in section 240 of the Revenue Act of 1926 that intercompany transactions shall be eliminated in computing the consolidated net income of affiliated corporations which elect to file consolidated returns for income tax purposes. In other words, the statutory treatment of intercompany transactions seems to be exactly opposite in the determination of the *excise tax* of affiliated corporations from that used in computing the consolidated *income tax* of affiliated corporations. It will be noted that in the case of income taxes the taxpayer is given an election; in the case of excise taxes there is no choice if the taxpayer permits himself to come within the act.

Plaintiffs' amended complaint (paragraph VII), in which it is alleged that the Corporation manufactured the bus bodies in question and transferred and delivered them to the System to be used and consumed by the System in the operation and maintenance of its transportation business, etc., seems to distinguish the case at bar from the case relied upon by plaintiffs. White Motor Co. v. United States, 3 F.Supp. 635, 77 Ct.Cl. 752, 12 A.F.T.R. 1043, certiorari denied (October 16, 1933) 290 U.S. 672, 54 S. Ct. 91, 78 L.Ed. 580. In the White Case the subsidiary corporation was a mere sales agent of its parent. The automobiles there involved were to be resold by the subsidiary as agent of the parent manufacturer. Here *the subsidiary used and consumed the bus bodies, as the ultimate consumer,* in the conduct of its business, and the transfer to the System was not for purposes of resale.

We think the record here fails to disclose any circumstance sufficient to support plaintiffs' claim; and we approve the Commissioner's ruling that each of the intercompany transactions in question were taxable sales under the provisions of section 601(a) of the Revenue Acts of 1924 and 1926 (Regulations 47, articles 7 and 8).

█ The Revenue Laws speak for themselves, and plaintiffs are charged with knowledge of their terms. The Corporations had a right under the excise tax law to conduct their operations as they saw fit, but, *having chosen to conduct them in such manner as to become liable for an excise tax,* plaintiffs will not now be heard to complain. There seems to be no valid reason why the System should not have manufactured its own busses—thereby avoiding any excise tax whatsoever. Instead, it chose for a period of years to take delivery of busses from its parent corporation at a 40 per cent. profit to that parent. It is admitted in the pleadings that the System is engaged in the business of transporting passengers for hire as a common carrier. The court will take judicial notice of the fact that, as such common carrier, the System was subject to the jurisdiction of the Railroad Commission in California for the purpose of fixing or approving rates; and that one element in such fixing of rates is the amount of cost or value of transportation equipment or rolling stock.

While there is no evidence in the record to that effect, it is possible that these affiliated corporations—one of which was subject to the jurisdiction of the Railroad Commission, and the other of which was not—preferred to sell and purchase, respectively, these bus bodies at a figure which would favorably reflect itself in invested capital on the books of the common carrier. Obviously, by increasing the cost of these busses on the books of the common carrier, (1) the annual allowance for depreciation and obsolescence was automatically in-

creased, and (2) the annual charge for a reasonable interest return on the invested capital was increased. This would be, of course, advantageous to the carrier because rates are properly, whenever possible, based upon a reasonable net return upon invested capital, after reasonable annual operating expenses have been provided for. Under the circumstances it might well be that it might have been considered profitable to the affiliated corporations to pay the excise tax. We have no way of knowing.

■■■■■ There may have been many reasons for plaintiffs' action, but the reason assigned in plaintiffs' brief is of no avail to create an estoppel on the part of the defendant. Plaintiffs claim that the taxpayer was lulled into a sense of security against excise taxation by the erroneous information of the two deputy collectors, and did not do what they would and could have done under other circumstances—avoided any excise tax by permitting the System to do its own bus body manufacturing. However, the doctrine of estoppel does not apply to. representations on matters of law; and the general rule is that the government is neither bound nor estopped by the acts of its agents in giving incorrect legal advice. Darling v. Commissioner (C.C.A.4th) 49 F.2d 111, 9 A.F.T.R. 1291, certiorari denied 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470.

■■■■ The allegation contained in paragraph XIII of the first cause of action of plaintiffs' amended complaint, "That the said Galen H. Welch, as Collector of Internal Revenue, as aforesaid, was estopped by reason of the said representations of the said Deputy Collectors from collecting the said excise tax, penalty and interest, as aforesaid," has been—apparently inadvertently—admitted by paragraph XIII of the answer. As herein indicated, the facts proved show that no estoppel may be invoked.

Under the circumstances, we find it unnecessary to pass upon the other point raised by defendant's counsel to defeat plaintiffs' claim of estoppel; namely, that since the defendant, Galen H. Welch, did not occupy the office of collector of internal revenue until April 6, 1926—some time after the alleged misrepresentations—the defendant may not be held personally liable for the acts of his predecessor in office.

The proof is out of harmony with the pleadings, and the latter will be considered amended to conform thereto.

Judgment for the defendant.