RAMÓN CRUZ ET AL., Plaintiffs and Appellants, v. FRANK RAMÍREZ DE ARELLANO ET AL., Defendants and Appellees.

No. 10850. Argued July 9, 1953.—Decided February 12, 1954.

*Guillermo Bauzá* for appellants. *Edelmiro Martínez Rivera* for appellees Ramírez de Arellano and Rivera Hernández. *Gutiérrez, Saldaña & Sánchez, Sarah Torres Peralta* and *C. Morales, Jr.,* for appellee Juliá Pasarell.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

On June 20, 1950, appellants herein filed in the San Juan Section of the former District Court of Puerto Rico, a complaint for recovery of judgment in order to enforce, against defendants personally, a judgment on a claim for wages previously obtained by them against the corporation Ramírez, Rivera y Juliá, Inc. The original complaint as well as several amended complaints were dismissed on the ground that they did not state facts sufficient to constitute a valid claim. Finally, a "Fourth Amended Complaint" was filed. A judge of the San Juan Court deemed that such amended complaint was sufficient and that its dismissal did not lie, but subsequently another judge, at the request of other defendants, granted a motion to dismiss holding that such amended complaint was insufficient. Plaintiffs prayed for judgment against them and in favor of all the defendants, and it was so done. Plaintiffs appealed to this Court from that judgment. The question raised deals essentially with the sufficiency of the "Fourth Amended Complaint," to which we shall refer as "the complaint."

The "Fourth Amended Complaint" being complete in itself, its sufficiency may be considered without regard to

prior complaints or orders relating thereto. *Studio Carpenters Local Union* v. *Loew's Inc.*, 182 F. 2d 168, certiorari denied, 340 U. S. 828; reconsideration denied, 340 U. S. 885; *Ericson* v. *Slomer*, 94 F. 2d 437; 71 C.J.S. 716, § 321.

■■ In order to determine our position as to the sufficiency of complaints in general, it is well to remember that the sufficiency of a complaint should be considered in the light of the situation most favorable to plaintiff, and that a complaint should not be dismissed unless it appears with certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. *Cruz* v. *Ortiz*, 74 P.R.R. 298, 301, and cases cited therein. According to the system of the Rules of Civil Procedure, the purpose of the complaint in itself is not to state with precision the issues, but to notify the defendant of the essence of the claim against him. (*Komer* v. *Shipley*, 154 F. 2d 861; *Moore* v. *Erie County Agr. Society*, 12 Federal Rules Decisions 6; Moore's Federal Practice, 2d ed. Vol. 2, pp. 1648, 1649, § 8.13.) One of the principal reasons for justifying this liberal construction of a complaint is the fact that the parties have recourse to other relief, under the rules, to determine with more accuracy the context, the exact nature, and the particulars of plaintiff's claim; such relief includes discovery, inquiry and pre-trial hearing. *Hickman* v. *Taylor*, 329 U. S. 495, 500, 501; 2 Moore *op. cit.*, p. 1652, § 8.13.

■■ The complaint before us alleges essentially the following:

Plaintiffs obtained a judgment in their favor against the corporation Ramírez, Rivera y Juliá, Inc., for the sum of $1,560 by virtue of a complaint claiming wages. Defendants were the sole stockholders and directors of that corporation, which was dissolved on September 14, 1943 by defendants' unanimous consent. The complaint on which the judgment was rendered was filed prior to dissolution of the corporation.

It is alleged "that since the date on which plaintiff's services were leased to the firm in question, defendants herein were the only ones who received benefits from the work done by plaintiffs herein," and that the corporation was dissolved "for the sole purpose of defrauding the outcome of this (*sic*) action, since plaintiffs have taken steps to enforce their judgments against the firm Ramírez, Rivera y Juliá, Inc., which appears insolvent, wherefore it has been impossible to enforce the same and they have been compelled to sue now the only owners, directors, and incorporators of the corporation in question.

It is further alleged that "the defendants are the only joint debtors of the indebtedness involved in this action, and the defendants *have sold the property belonging to the corporation* Ramírez, Rivera y Juliá, Inc., and that they are the only directors, organizers, and sole beneficiaries of the business of the said corporation, *having rendered the same insolvent* for the sole and deliberate purpose of defrauding plaintiffs herein, who are its creditors," and "to prejudice plaintiffs in particular"; that the defendants *incurred indebtedness in excess of the value* of the capital stock and the properties and assets of the corporation Ramírez, Rivera y Juliá, Inc., *defendants being the directors who authorized by their votes the incurrence* of such indebtedness ... *the corporation in question not having sufficient assets to pay the judgment in favor of plaintiffs* ... "that upon dissolution of the corporation by defendants they did not comply with their duty to set aside a sum to pay for the credit sought to be collected in this action." (Italics ours.)

The purpose of the complaint is to hold defendants personally liable, as sole stockholders, directors, and trustees of a dissolved corporation, for the prior debts of the corporation. There are several situations in which such personal liability may arise, and some of those situations are set forth ade-

quately in the complaint before us. Hence, the complaint is sufficient and the judgment appealed from should therefore be reversed.

Sections 28 and 29 of our Law of Private Corporations (Act No. 30 of 1911, Sess. Laws, p. 87), provide as follows:

"Section 28.—(As amended by Act No. 24 of 1916, page 68.) Directors as trustees pending dissolution.—Upon the dissolution in any manner of a corporation, the directors shall be the trustees thereof pending the liquidation, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, so far as such moneys and property shall suffice. They shall have power to meet and act under the by-laws of the corporation, and, under regulations to be made by a majority of the said trustees, to prescribe the terms and conditions of the sale of such property, or may sell all or any part for cash, or partly on credit, or take mortgages and bonds for part of the purchase price for all or any part of the said property. In case of a vacancy or vacancies in the board of directors of such corporation existing at the time of dissolution or occurring subsequently thereto, the surviving directors or director shall be the trustees or trustee thereof, as the case may be, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them, and to do and perform all such other acts as shall be necessary to carry out the provisions of this Act relative to the winding up of the affairs of such corporation and to the distribution of its assets.

"Section 29.—Powers and liabilities of trustees in liquidation.—The directors constituted trustees as aforesaid shall have power to sue for and recover the aforesaid debts and property by the name of the corporation and shall be suable by the same name, or in their own names or individual capacities for the debts owing by such corporation, and shall be jointly and severally responsible for such debts to the amount of the money and property of the corporation which shall come to their hands or possession as such trustees." (Italics ours.)

The creditors of a corporation may personally sue the stockholders or the directors who are constituted trustees in liquidation after the dissolution, with respect to the property of the corporation held by those stockholders or trustees, and if the latter dispose of, or sell that property to the prejudice of creditors, they may incur a personal liability to those creditors. Fletcher, *Cyclopedia of the Law of Private Corporations*, Vol. 16, § 8161, p. 922 *et seq.*; *Koch* v. *U. S.*, 138 F. 2d 850; *Hutton* v. *Commissioner of Internal Revenue*, 59 F. 2d 66, particularly if the corporation is insolvent after dissolution. *Cf.* 13 Am. Jur. 991. The relevant rule is to the effect that such property should be considered as existing for the benefit, in part, of the creditors, and such stockholders or trustees receive it, in part, for the benefit of the creditors, and therefore they may not dispose of such property to the creditors' prejudice. Regarding the "trust-fund" rule as respects such property, see 13 Am. Jur. 1197.

■ It is alleged in the complaint before us that the defendants have sold the property of the corporation and have rendered it insolvent to the prejudice of plaintiffs as creditors, "for the sole and deliberate purpose of defrauding the plaintiffs as creditors." Such allegation is sufficient to hold defendants personally liable, in view of the rules set forth above.

■ We are aware that a corporation has a legal personality independent of its stockholders. But if the corporation is the mere "alter ego" or business conduit of its only stockholders, with the benefits produced by the corporate business accruing exclusively and personally to them, then the stockholders shall be personally liable if it is necessary to prevent fraud or the accomplishment of an illicit purpose, or to prevent an injustice or a wrong. 1 Fletcher, *op. cit.*, § 41, pp. 136, 139, and cases therein cited; Ballantine on *Corporations*, § 123, p. 294; *Minifie* v. *Rowley*, 202 Pac. 673;

*Gross* v. *Cohen et al.*, 58 So. 2d 703; *Loughran* v. *Reynolds*, 127 P. 2d 586; *Davis* v. *Perry*, 120 Cal. App. 670, 8 P. 2d 514; *Pickwick Corp.* v. *Welch*, 21 F. Supp. 664, 669; *Hollywood Cleaning and Pressing Co.* v. *Hollywood Laundry Service, Inc.*, 217 Cal. 124.

■ Within the rule of liberal interpretation of complaints as pleadings, the situation pointed out above arises substantially from the allegations of the complaint before us. Naturally, if the corporate entity is to be disregarded in a particular case, such action would depend upon the circumstances in each case, in the light of the general rules set forth above, and should be decided by the trial court after weighing the evidence. *Stark* v. *Coker*, 129 P. 2d 399. We are not anticipating the merits of this case, nor holding that this is an adequate case, in accordance with the reality of the facts, to warrant application of the "alter ego" or "avoidance-of-fraud" rule set forth above. We confine ourselves to deciding that the complaint, considered separately, states sufficient facts to serve as a basis for the decision of the case on its specific merits.

■ It is alleged in the complaint that defendants, as directors of the corporation, incurred indebtedness in excess of the value of the capital stock and the property and assets of the corporation; that they authorized by their votes the incurrence of that debt; that the corporation does not have sufficient assets to satisfy the award made in plaintiffs' favor; and that upon dissolution of the corporation they did not set aside any amount to pay plaintiffs' credit (by judgment).

Section 35 of our Law of Private Corporations provides as follows:

"Section 35.—*Corporate indebtedness.*—No corporation shall incur any indebtedness for any purpose whatever in excess of the paid-up value of its capital· stock or of the value of . its property and assets. The directors who shall authorize by their votes the incurrence of any such indebtedness shall be jointly and severally liable individually for the amount of such

indebtedness, and the said liability shall be enforced in any action brought by any creditor who shall establish therein that judgment has been rendered for his claim and that the liquidated assets of the corporation have been insufficient to pay the same."

The allegations of the complaint fall within the range of application of § 35. However, the defendants and appellees contend that, under the provisions of § 35, the directors are liable only for the particular and specific indebtedness incurred in excess of the legal limit, or up to the extent of that limit, or for the excessive indebtedness. This point is not alleged in the complaint. However, our interpretation of that Section is different. The Section speaks of "any indebtedness" in excess of the value of the capital stock or the property or assets, and that the authorizing directors shall be liable for "the amount of such indebtedness." The Section does not establish any preference whatever regarding the enforceability of the directors' liability, in favor of subsequent creditors at the time that indebtedness exceeding the limit was incurred, over those creditors whose indebtedness was created at an earlier time. True, § 35 speaks of personal liability of the authorizing directors as respects "the amount of such indebtedness," that is, the indebtedness exceeding the aforesaid amount. However, that phrase refers to the measure and scope, amount or pecuniary limits of their liability, and should not be interpreted as identifying certain specific debts, or as establishing preference among creditors.

To establish such preference by virtue of the restrictive interpretation of § 35 urged by defendants, would be wholly unjust, unfair, and impracticable. In 9 Cornell 269, Harper, *"Liability of Directors for Creating Excessive Indebtedness,"* it is stated as follows at p. 279:

"Some courts have taken the view that only those creditors whose claims constitute the excessive indebtedness may enforce the liability. ... This doctrine is subject to criticism. If those

claims which constitute the excess are paid in full, such payment reduces *pro tanto* the fund available for the satisfaction of all the other claims against the corporation.   The existing creditors whose claims are within the prescribed amount are injured by such practice to the extent that corporate assets are withdrawn to pay the excessive indebtedness.   In such case, the position of the last creditor is better than that of the first creditor who extends credit to the corporation when it has no indebtedness.   The last creditor may look both to the corporate assets and to the directors individually for the payment of his claim; while the first creditor can look only to the corporate assets, which fund is constantly subject to diminution by the payment therefrom of debts created in excess . . .   It is a case where literally the first shall be last, and the last shall be first. In such a case, a director advised in the law would see to it that the excessive indebtedness was paid out of the corporate assets before the other corporate debts were paid.   Such a construction of these statutes defeats their purpose.

"Other courts have construed these statutes as creating a liability in favor of all creditors, including those whose claims are within the statutory limit, as well as those whose claims exceed it.   This undoubtedly is the only rule that will produce an equitable result."

Where the statute speaks of "the creditors of a corporation," or of "the indebtedness," or "claims," within the ambit of applicability of § 35, it refers to all creditors and not only to a part of them, and includes both the excessive and the prior claims.   *National Bank* v. *Dillingham*, 147 N. Y. 603, 609–610, 42 N. E. 338; *Hornor* v. *Henning*, 93 U. S. 228; *Whitney* v. *Pugh*, 58 App. Div. 316; *Moss* v. *Smith*, 155 Pac. 90.

The defendants and appellees contend that under § 35 the directors' personal liability for excessive indebtedness should not be imposed as respects those debts incurred by a corporation in the conduct of its ordinary business, and that it is not alleged in the complaint that the debt incurred in the instant case was outside the conduct of the corporate business.   (Cases cited in Thompson, *Commentaries on the Law of Corporations*, Vol. 1, p. 266, § 218.)   However, § 35

does not make any distinction between the different classes of claims and indebtedness. It does say that the directors shall not incur "any indebtedness for any purpose whatsoever" in excess of the prescribed limit, that is, the limitation extends to all classes of indebtedness and does not confine itself to any specific type of indebtedness. We agree with the rule laid down in many jurisdictions to the effect that the directors' personal liability can be imposed as respects all kinds of excessive indebtedness incurred within or without the conduct of ordinary business. 13 Am. Jur. 1003, § 1062; 12 Ann. Cas. 807, where indebtedness on account of wages is specifically included; L.R.A., 1915 D., pp. 1039 *et seq.*

The appellees contend that the complaint does not allege that the defendant directors have expressly assented to the creation of the indebtedness involved in this case, or that such indebtedness was incurred without the limit prescribed under § 35. In order that the directors may be held liable, they must assent personally to the creation of the indebtedness. However, such assent may or may not be given at a formal meeting of the board of directors. (9 Cornell L.Q. 269 Article cited.) It is alleged in the complaint that the directors authorized by their votes the creation of indebtedness with respect to plaintiffs. That allegation is sufficient if we consider in particular the fact that the form and manner in which such assent was given is a matter within the defendants' personal knowledge, and it could afterwards be established by plaintiffs by the procedural methods of discovery and ascertainment of specific facts and details. 4 Cyc. Fed. Proc. 218, § 14.171, 3d ed.

It could be argued that the pronouncements set forth in this opinion entail personal liabilities too burdensome for the directors, and that it would serve to discourage future stockholders to become directors. However, our opinion relies on specific provisions of the Law of Private Corporations, and conforms to the pleadings presented in this particular

case, the allegations of which will have to be proved later. Our opinion may serve to encourage future directors to act cautiously, fairly, and in pursuance of law.

■ The lower court held that plaintiffs' claim has prescribed, in view of the provisions of § 945 of the Code of Commerce, which reads as follows:

"Section 945.—Actions against the managing and directing members *of associations* shall terminate at the end of four years, to be counted from the time they cease to manage the same for any reason whatsoever." (Italics ours.)

Our Code of Commerce was taken from the Code of Spain, and our § 945 corresponds to the Spanish § 949. Those Sections refer to "the associations" enumerated and covered by the Code of Commerce, such as stock companies. Our Law of Private Corporations constitutes an appendix to the Code of Commerce, but it is not an integral part thereof. When the Code of Commerce was enacted with its § 945, we adopted the term "associations" employed in § 945, in the sense and with the meaning given to it in the Classical Commercial Code, that is, as referring to the "associations" of the Spanish Code of Commerce. Stock companies are very similar to our corporations, but we believe it was not the legislative intent that the Law of Private Corporations should be a substitute for the provisions dealing with stock companies, and that corporations should be regarded as stock companies under the general provisions of the Code of Commerce, under the general prescription provision embodied in § 945, the provisions of which in their Spanish origin were applicable to stock companies and not to corporations, as this term was adopted in the Law of Private Corporations.

The difference between "the association" used in the Code of Commerce and "the corporation" used in the Law of Private Corporations is evidenced by the fact that, when the special Law of Private Corporations was enacted in 1911, the provisions of the Code of Commerce dealing with stock com-

panies remained in force, and continued to coexist in the Law of Private Corporations until 1930, when the provisions dealing with stock companies were repealed. (Act No. 42 of April 25, 1930, Sess. Laws, p. 320.) We cannot conclude, therefore, that corporations are a substitute for stock companies within the purview of the general provisions of the Code of Commerce. The legislature in no way expressed in the Act of 1930, *supra*, that the general provisions of the Code of Commerce, which remained in force after the Act of 1930 (such as § 945) and which were previously applicable to stock companies, would extend to corporations.

Section 1864 of the Civil Code, which provides a term of prescription of fifteen years for personal actions for which no special term of prescription is fixed, is applicable to the case at bar. Therefore, the action in the instant case has not prescribed.

The judgment appealed from is reversed and the case remanded to the San Juan Part of the Superior Court for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Snyder concurs in the result.

Mr. Justice Sifre, Mr. Justice Pérez Pimentel and Mr. Justice Belaval did not participate herein.