THE ANDREW JERGENS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96562.  Promulgated November 7, 1939.

*Carl M. Jacobs, Esq.,* and *William R. Seaman, Esq.,* for the petitioner.

*P. M. Clark, Esq.,* and *Stanley B. Pierson, Esq.,* for the respondent.

**OPINION.**

MURDOCK: The parties have stipulated that more than 50 percent in value of the petitioner's outstanding stock was owned, directly or indirectly, by or for not more than five individuals during the taxable year. The respondent concedes that the gross income of the petioner was $1,789,954.15, an amount somewhat larger than that reported on the original return. The stipulated amount of income derived from royalties, dividends, interest, annuities, and gains from the sale of stock and securities was about 84 percent of the gross income conceded by the respondent. The respondent contends, upon these facts, that the petitioner was liable for tax as a personal holding company under section 351. The first contention made by the petitioner is that its correct gross income for 1935 was $2,033,198.51, or $243,244.36 greater than the amount conceded by the respondent, and since its personal holding company income was less than 74 percent of that amount, it was not subject to tax under section 351. If the amount of $243,244.36 was properly a part of the gross income of the petitioner, then the other contentions of the petitioner to the effect that section 351 was never intended to apply to an operating company like the petitioner, and, if applied, would be unconstitutional, need not be considered.

The petitioner, at the end of each year, computed the portions of its overhead and general expenses which were applicable to the conduct of the business of Woodbury and Sales. It then allocated those portions of its expenses to Woodbury and Sales and charged them to those two corporations on its books in accounts receivable. The respondent does not attack the method of allocation and he does not contend that an incorrect amount has been allocated to either Woodbury or Sales. He first suggests that the record is not clear that the two subsidiaries actually paid to the petitioner the amounts charged to them. However, since the petitioner was using an accrual method of accounting, actual payment was not necessary and there is no reason to believe that the accounts receivable were not genuine and adequate. He also suggests that the contracts were not entered into for profit. It is clear, however, that the contracts were entered into

for business purposes and for profit in a broad sense, even though the petitioner may have expected no direct profit from the contracts themselves. But in any event, this suggestion seems to lead nowhere. He next suggests that the amounts in controversy were advances, citing *Boston Elevated Railway Co.*, 37 B. T. A. 494, the petitioner and its subsidiaries were engaged in a joint venture, and the items in controversy were a mere adjustment of expenses. The real question is whether the items in controversy were properly a part of the gross income of the petitioner or whether they merely served to reduce the expenses of the petitioner without becoming a part of its gross income.

It is immaterial for the purpose of computing the income tax due under section 13 whether the petitioner reported the amounts charged to Woodbury and Sales as income and deducted the full amount of its expenses, or whether it applied the amounts charged to Woodbury and Sales directly to reduce the amount of its deductible expenses. It chose the latter method until it realized that under that method it might be liable for a tax under section 351. It then attempted to change retroactively its accounting method for 1935. The original method of accounting for these items may have some evidentiary value, but it is not determinative of the case. If the items in controversy were a part of the gross income of the petitioner, as that term is defined in section 22 of the Revenue Act of 1934, then section 351 does not apply.

Gross income is defined in section 22 of the Revenue Act of 1934 as including gains, profits, and income derived from businesses, commerce, or dealings in property growing out of the ownership or use of or interest in such property, from rent or the transaction of any business carried on for gain or profit, and gains, profits, and income derived from any source whatever. The petitioner under its contract with Woodbury agreed to use its property and supply its services in manufacturing the Woodbury products. It was to receive compensation from Woodbury for those things. The compensation which it was to receive was measured by and was to be equal to that portion of its total overhead expenses allocable to Woodbury. The amount of the compensation was computed and was actually charged to Woodbury as an account receivable. The petitioner used an accrual method of accounting, and the amount charged to Woodbury was income to the petitioner under the broad definition of section 22. The same is true of similar items charged to Sales. The petitioner, as owner of the property, was entitled to deduct the full amount of the taxes which it actually paid on its property, and the full amount of depreciation which it sustained on that property, as well as the full amount expended for labor and materials in repairing its property. The respondent does not contend to the contrary. Neither does he suggest any reason why the petitioner was not entitled to deduct on its re-

turns the full amount which it paid for light, heat, power, and the full amount of its other expenses incurred in the operation of its properties during 1935. Woodbury and Sales did not pay any taxes, suffer any depreciation, or expend any amounts for repairs. They were not owners of the property. The amounts charged to them by the petitioner were deductible by them on some other basis. Those amounts represented expenses of their business. They were either wholly, or partly, rent, and if not entirely rent, they were expenses paid out as compensation for services rendered by the petitioner. Similar expenditures were held to be deductible as rent in the case of *Denholm & McKay Co.*, 39 B. T. A. 767. See also *Charles R. Holden*, 27 B. T. A. 530, where somewhat similar items were held to be rent even though the contract stated that they were not rent. The petitioner in the latter case leased a part of a building for a long period as a residence, and agreed to pay his proportionate part of the operating expenses of the building, including annual interest charges and taxes. The Board held that all of the payments constituted rent, a nondeductible item in the case of a residence, and that no part of them were deductible as interest and taxes. See also *Frank Holton & Co.*, 10 B. T. A. 1317. Thus, whether the expenditures are viewed from the standpoint of the petitioner or from the standpoint of Woodbury and Sales, they represent income of the petitioner. Cf. *Hamilton* v. *Kentucky & Indiana Terminal Railroad Co.*, 289 Fed. 20; *Terminal Realty Corporation*, 32 B. T. A. 623; *Nowland Realty Co.* v. *Commissioner*, 47 Fed. (2d) 1018; *United States* v. *Boston & Maine Railroad*, 279 U. S. 732. See also articles 22 (a)–20 and 23 (a)–10 of Regulations 86. Whether the amounts charged to Woodbury and Sales are designated as rents or as some other kind of income is not now important. The petitioner could not clearly reflect its correct gross income unless it reported the full amount which it charged to Woodbury and Sales to compensate it for the use of its property and the services which it rendered to those two companies.

It might be pointed out in conclusion that if the petitioner and its subsidiaries were engaged in a joint venture, or if the case of *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, applied, the petitioner would not be liable for tax under section 351. The *Southern Pacific* case is cited for the proposition that the mere receipt of money or other property does not necessarily imply the receipt of gross income. The proposition is, of course, sound. For example, the cost of goods sold is never regarded as a proper part of gross income and has been eliminated in the present case. But the Supreme Court in the *Southern Pacific* case completely disregarded the corporate entity of a subsidiary and held that dividends paid by the subsidiary were not income to the parent under the "very peculiar facts." Woodbury had no bank account, no manufacturing plant or equipment, and no em-

ployees of its own. All of its business and affairs were conducted for it by the petitioner. If the separate entity of Woodbury were to be disregarded, then all of the earnings of the group would be the earnings of the petitioner and there would be no dividends from Woodbury to the petitioner. Likewise, if the transaction were regarded as a joint venture, then the entire amount which the petitioner took out of the venture would be regarded as its share. In neither case would the personal holding company income of the petitioner amount to 80 percent of its gross income. The penalty falls with the tax.

*Decision will be entered under Rule 50.*